UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STEFAN MOZDZIAK,

                Plaintiff,

       -against-                                    24-cv-8579 (LAK)

ARIANNE ROMEO, *et al.*,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _08/11/2025_

**MEMORANDUM OPINION**

Appearances:

> Brett Harris Klein
> BRETT H. KLEIN, ESQ., PLLC
> *Attorney for Plaintiff*
>
> Mark Robert Ferguson
> Assistant Attorney General
> LETITIA JAMES
> ATTORNEY GENERAL OF THE STATE OF NEW YORK
> *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Stefan Mozdziak brings claims under Section 1983 arising from his expulsion from State University of New York Maritime College ("SUNY Maritime") and arrest by New York State University Police – Maritime ("UPD") officers. Defendants Arianne Romeo, Mark Martinez, Richard Paulino, and Michael Perdoncin (collectively, "Defendants") move to dismiss the complaint.

2

*Facts*[1]

Mozdziak alleges that, on September 21, 2021, a SUNY Maritime building official contacted UPD to report that a racial epithet had been etched into the door of a dorm elevator.[2] The next day, a student "N.T." emailed the UPD stating that he had observed the etching when he moved into the dorm on August 23, 2021.[3] On October 1, 2021, Assistant Dean Arianne Romeo received statements from two students alleging they saw Mozdziak carve the epithet into an elevator on August 29, 2021,[4] six days after N.T. recalled having seen the etching. SUNY Maritime initiated a disciplinary proceeding against Mozdziak and, after conducting a hearing, expelled him on November 12, 2021.[5] Plaintiff alleges that "defendants withheld the exculpatory email known to them since September 22, 2021 that confirmed that the racial epithet had been present on the elevator at least a week before the two students claimed to have seen plaintiff carving it, and prior to plaintiff's arrival on campus."[6]

About a week after his expulsion, Mozdziak was arrested by UPD officers Martinez, Paulino, and Perdoncin (the "Officer Defendants") and processed on charges of criminal mischief and

---

[1] At this stage, the Court assumes the truth of the well-pleaded factual allegations of the complaint and draws all reasonable inferences in the plaintiff's favor. See *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[2] Dkt 1 ("Compl.") ¶ 13.

[3] *Id.* ¶ 14.

[4] *Id.* ¶¶ 7, 16.

[5] *Id.* ¶ 17.

[6] *Id.* ¶ 18.

making graffiti.[7]  Mozdziak was issued a desk appearance ticket and later was charged by the Bronx County District Attorney's office.[8]  Those charges were dismissed and sealed on February 3, 2022.[9]  Mozdziak alleges that the UPD officers caused the prosecution to be commenced without probable cause and withheld exculpatory information from prosecutors.[10]

While the criminal process was ongoing, Mozdziak filed an Article 78 proceeding in New York state court challenging his expulsion.[11]  Mozdziak states that the New York Appellate Division, First Department, annulled his expulsion based on the withholding of the purportedly exculpatory statement from N.T.[12]

Mozdziak now brings claims against Romeo, the Officer Defendants, and unnamed "officers and/or under agents of SUNY Maritime and/or UPD"[13] (the "Unnamed Defendants") under 42 U.S.C. § 1983 for false arrest/unlawful imprisonment, malicious prosecution, violation of his right to a fair trial/due process, failure to intervene, and supervisory liability.[14]

---

[7] *Id.* ¶ 20.

[8] *Id.* ¶ 21, 23.

[9] *Id.* ¶ 25.

[10] *Id.* ¶¶ 22–24.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 28.

[13] *Id.* ¶ 9.

[14] *Id.* ¶¶ 32–50.

4

### *Discussion*

I.  *Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[17]

II.  *Personal Involvement*

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."[18] "A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law."[19] Defendants argue that the complaint does not allege the personal involvement of any of the individual defendants in the

---

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id.* at 678.

[17] *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

[18] *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

[19] *Singleton v. DeMarco*, No. 11-CV-2772 JS ETB, 2011 WL 2532928, at *2 (E.D.N.Y. June 22, 2011).

constitutional violations alleged.

With respect to defendant Romeo, the complaint alleges that she received written statements alleging Mozdziak's involvement in carving the racial epithet.[20] It does not allege that she received or knew of the email from N.T.,[21] nor does it allege that she was involved in the disciplinary proceeding against Mozdziak. The only other allegation about her involvement is that she, along with the Officer Defendants, "either directly participated in and/or supervised the false arrest, malicious prosecution, withholding of exculpatory information, and due process violations detailed herein, or failed to intervene in said constitutional violations despite being present for and/or aware that said violations were occurring."[22] This vague, conclusory allegation fails to allege Romeo's personal involvement in the alleged deprivation of Mozdziak's constitutional rights. Accordingly, the complaint does not state a viable claim against Romeo.

With respect to the Officer Defendants, the complaint alleges that they arrested Mozdziak, caused the filing of criminal charges against him without probable cause, and withheld exculpatory information from prosecutors.[23] The complaint thus alleges the personal involvement of all three officers in these alleged constitutional violations.

---

[20] Compl. ¶ 16.

[21] The Complaint does allege that "defendants withheld [the N.T. email] known to them since September 22, 2021," *id.* ¶ 18, but it states only that the email was sent to UPD on that date and does not otherwise allege facts giving rise to the reasonable inference that Romeo received or knew of the email at that time.

[22] *Id.* ¶ 30.

[23] *Id.* ¶¶ 22–24.

6

III.    *Group Pleading*

Defendants argue that the complaint should be dismissed because it "consists almost entirely of improper group pleading that fails to distinguish the specific acts of each Defendant."[24] Fed. R. Civ. P. 8(a) "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"[25] A complaint fails this standard where it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct."[26]

Here, the allegations in the complaint do not distinguish among the Officer Defendants. Nevertheless, "specificity as to each . . . [d]efendant's individual actions is not required where, as here, the complaint 'gives each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'"[27] Accordingly, the complaint does not run afoul of the prohibition on group pleading.

IV.    *Section 1983 Claims*

The complaint alleges five claims under Section 1983: (1) false arrest/unlawful

---

[24] Dkt 16 at 4.

[25] *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)).

[26] *Id.*

[27] *Buari v. City of New York*, 530 F. Supp. 3d 356, 390–91 (S.D.N.Y. 2021) (cleaned up) (quoting *Southerland v. N.Y.C. Hous. Auth.*, No. 10-CV-5243 (SLT), 2010 WL 4916935, at *2 (E.D.N.Y. Nov. 23, 2010)).

7

imprisonment, (2) malicious prosecution, (3) violation of the right to a fair trial/due process, (4) failure to intervene, and (5) supervisory liability.[28]

    A.    *Documents to be Considered*

As an initial matter, the parties dispute whether the Court's probable cause analysis is limited to the face of the complaint, or whether the Court may consider the UPD police report related to Mozdziak's arrest. The police report includes copies of sworn statements from two students alleging they saw the etching take place and implicating Mozdziak.[29] Defendants argue that the Court may take judicial notice of the police report because it was attached to Mozdziak's verified petition in the Article 78 proceeding, which was referenced in the complaint.[30] Mozdziak argues that this document is not incorporated into the complaint and cannot be considered.

"A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"[31] Here, defendants do not rely on the police report to establish the truth of the matters asserted therein, nor do they rely on it merely to establish the fact of the parallel litigation or the existence of the police report. Instead, they ask the Court to consider the contents of the police

---

[28] *Id.* ¶¶ 32–50.

[29] *See* Dkt 17-1. One statement names Mozdziak as the perpetrator, Dkt 17-1 at 3, while the other refers to the perpetrator as "our teammate." *Id.*

[30] Compl. ¶ 27.

[31] *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

8

report in its probable cause analysis — consideration that is neither prohibited nor authorized explicitly by Second Circuit precedent.

In *Kramer v. Time Warner Inc.*,[32] the Second Circuit ruled that a court could consider publicly filed documents in deciding whether to dismiss a securities fraud claim. In so ruling, the court noted that the documents were "relevant not to prove the truth of their contents but only to determine what the documents stated."[33] Here, the police report is relevant to determine what the sworn statements say, not whether they are true. *Kramer* thus supports the view that the police report may be considered for the purpose it was offered by defendants.

The Second Circuit's decision *Taylor v. Vermont Department of Education*,[34] offers further support for this conclusion. There, the Second Circuit held that a court could take judicial notice of the terms of a state court divorce decree in deciding a motion to dismiss.[35] This notice was not limited to the mere existence of a decree — the court relied on the terms of the decree in adjudicating plaintiff's entitlement to relief.[36] *Taylor* thus indicates that a court, in taking judicial notice of a state court document, is not limited to noticing the fact that a given document exists, but

---

[32] 937 F.2d 767 (2d Cir. 1991).

[33] *Id.* at 774.

[34] 313 F.3d 768 (2d Cir. 2002).

[35] *Id.* at 776.

[36] *Id.* at 792 (noting that "[t]he divorce decree clearly states that all legal rights over education lie with the father" and concluding that the mother's "right to seek a hearing to challenge the content of her daughter's academic files has therefore been 'specifically revoked'" by the decree such that she did not have a right to sue under the applicable statute).

9

may also consider the contents of that document so long as it does not consider it for the truth of the matters asserted therein.

The permissibility of taking judicial notice of the contents of the sworn statements in the police report is further reinforced by Fed. R. Evid. 201(b)(2), which provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the fact that the sworn statements were made "can be accurately and readily determined" from the police report. Mozdziak does not dispute the accuracy of the police report as to the existence of the sworn statements. Indeed, Mozdziak quoted the sworn statements in his Article 78 petition and attached the police report to it.[37]

Mozdziak cites a report and recommendation in *Regeda v. City of New York*,[38] for the proposition that "[w]hile courts regularly take judicial notice of publicly filed documents in assessing motions to dismiss, they make their determination of probable cause based on the allegations on the face of the complaint."[39] But *Regada* is not persuasive here.

First, *Regeda* is distinguishable because the public records there at issue did not "parallel the allegations in the complaint."[40] Here, in contrast, the Article 78 petition to which the

---

[37] Dkt 24-1 at ¶¶ 53, 55.

[38] No. 09-CV-5427 (KAM) (VVP), 2012 WL 7157703 (Sept. 7, 2012), *report and recommendation adopted,* 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013).

[39] *Id.* at *3.

[40] *Id.*

10

police report is attached does parallel the allegations made in this case.

Second, several other district courts in this Circuit have taken judicial notice of public records for purposes analogous to those present here.[41]

Accordingly, the Court takes judicial notice of the UPD police report and the contents of the sworn witness statements contained therein but not for their truth.[42]

B.    *False Arrest*

To state a claim for false arrest under Section 1983, a plaintiff must allege that "(1) the defendant intended to confine [him]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."[43]

"The only element seriously at issue here is whether the confinement was privileged.

---

[41] *See King v. City of New York,* No. 12-cv-2344 (NGG)(RER), 2014 WL 4954621, at *18–19 (E.D.N.Y. Sept. 30, 2014) (taking judicial notice of the contents of documents that were part of a plaintiff's state court criminal case file in resolving whether there was probable cause to arrest); *Wiltshire v. Williams*, No. 10-cv-6947, 2012 WL 899383, at *10 n.4 (S.D.N.Y. Mar. 16, 2012) (taking judicial notice of the contents of an order issued and an affidavit filed in state court); *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002) (taking judicial notice of the contents of an order in an Article 78 proceeding); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 518–19 (E.D.N.Y. 1996) (taking judicial notice of statement contained in a state court hearing transcript).

[42] Defendants argue also that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Dkt 16 at 2 n.2 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  It is not evident from its face that the complaint relies heavily upon the terms and effect of the police report.  In any event, in light of the Court's holding with respect to judicial notice, the Court need not resolve whether the police report is integral to the complaint.

[43] *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

11

If probable cause existed, [the Officer Defendants] would be privileged to make an arrest. An officer has probable cause to arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"[44] "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity."[45]

        The parties dispute whether the N.T. email raises doubt as to the purported eyewitnesses' veracity sufficient to negate probable cause.. Defendants argue that the Officer Defendants could "presume to rely upon the sworn statements of two eyewitnesses with no apparent motive to falsify to establish probable cause for the arrest of Plaintiff."[46] They cite *Streater v. West Haven Police Department*[47] for the proposition that "the law governing arrests allows police officers to credit one witness's version of events over another's, as long as there is a reasonable basis to do so."[48] Plaintiff, on the other hand, contends that the reasonableness of the Officer Defendants' reliance on the sworn statements presents an issue of fact that goes directly to the existence of probable cause.

---

[44] *Jocks v. Tavernier*, 135 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

[45] *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

[46] Dkt 16 at 8.

[47] 2022 WL 1720355 (D. Conn. May 27, 2022).

[48] *Id.* at *4.

12

Drawing all inferences in Mozdziak's favor, as the Court must at this juncture, the N.T. email arguably raised sufficient doubt as to the existence of probable cause. But that issue need not be decided here, as even a determination of an absence of probable cause would not suffice to sustain plaintiff's false arrest claim. Even in that case, he would be obliged to defeat the qualified immunity defense raised by defendant in order for the claim to be sustained.[49]

A police officer is entitled to qualified immunity from liability for his discretionary actions if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[50] "Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest. Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"[51]

Here, two sworn statements from purported eyewitnesses indicated that Mozdziak had committed a crime. Although the N.T. email undercut those statements because it indicated that the etching had taken place earlier, it was unsworn and did not reflect an eyewitness account of the incident. Mozdziak does not identify authority clearly establishing with the requisite "high degree of

---

[49] *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (qualified immunity defense may "be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint").

[50] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[51] *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

specificity"[52] that probable cause did not exist in such circumstances. At the very least, arguable probable cause existed because officers of reasonable competence could disagree on whether the probable cause test was met. Mozdziak is "entitled to all reasonable inferences from the facts alleged," including "those that defeat the immunity defense."[53] But, taking into account the facts alleged and the police report, it is "beyond doubt that the plaintiff can prove no set of facts" that would prove that there was not arguable probable cause.[54]

Accordingly, the Officer Defendants are entitled to qualified immunity for the false arrests claims as alleged.

C. *Malicious Prosecution*

"To succeed on a claim for malicious prosecution, the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff."[55] "[C]ontinuing probable cause is a complete defense to a constitutional claim of malicious prosecution."[56] As with the false arrest claim, a defendant is entitled to qualified immunity for a

---

[52] *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

[53] *McKenna*, 386 F.3d at 436.

[54] See *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992).

[55] *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

[56] *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

14

malicious prosecution where there was arguable probable cause.[57]

For the reasons set forth above, there was arguable probable cause to arrest Mozdziak. The complaint does not allege that any information arose nullifying that arguable probable cause before the charges against Mozdziak were dismissed.[58]

Accordingly, the Officer Defendants are entitled to qualified immunity for the malicious prosecution claims as alleged.

D. *Fair Trial*

To state a claim for denial of a fair trial, a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."[59] "[I]n addition to the fabrication of evidence, '[p]olice officers can be held liable . . . if they withhold exculpatory evidence from prosecutors.'"[60] "[A] Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can

---

[57] *Id.* at 83.

[58] *See Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) ("In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact." (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).

[59] *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

[60] *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 535 (E.D.N.Y. 2021) (second alteration in original) (quoting *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015)).

stand even if the officer had probable cause to arrest the Section 1983 plaintiff."[61]

Here, Mozdziak alleges that the Officer Defendants withheld exculpatory evidence, the N.T. email, from prosecutors.[62] But he does not allege that he was deprived of life, liberty, or property. The Second Circuit has held that "a criminal defendant can bring a fair trial claim even when no trial occurs at all."[63] But the plaintiff in that case suffered a deprivation of liberty because the allegedly false testimony resulted in his three-and-a-half-year pretrial detention.[64] Mozdziak does not allege that he was subject to pretrial detention.[65]

Accordingly, Mozdziak has not alleged sufficiently a claim for denial of his fair trial rights.[66]

---

[61] *Garnett*, 838 F.3d at 277–78.

[62] Compl. ¶ 24.

[63] *Frost v. New York City Police Dep't*, 980 F.3d 231, 249 (2d Cir. 2020).

[64] *Id.* at 239, 249–50.

[65] Mozdziak alleges that he was detained pursuant to his arrest. Compl. ¶ 33. But he does not allege that he was detained pursuant to any charges filed by prosecutors allegedly caused by the withholding of allegedly exculpatory information.

[66] Defendants argue also that this claim should be dismissed because it is contradicted by the police report, which references and attaches the N.T. email. *See* Dkt 17-1 at 2. However, it is not clear from the face of the police report or the complaint that prosecutors had access to the document at the time they charged Mozdziak. Defendants argue that "[p]laintiff's baseless assumption that the police paperwork was not provided to the prosecutors is a conclusory allegation." Dkt 23 at 8. But the Court is required to draw all reasonable inferences in plaintiff's favor at this stage, and plaintiff's allegation that prosecutors did not have access to the police report is at least plausible.

16

E.   *Failure to Intervene and Supervisory Liability*

"A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation."[67] And where "there was no underlying constitutional violation, there is also no supervisory liability."[68] Here, Mozdziak has not alleged sufficiently that there was an underlying constitution violation for which he is entitled to relief.

Accordingly, the failure to intervene and supervisory liability claims must be dismissed.

### *Conclusion*

For the foregoing reasons, defendant's motion to dismiss (Dkt 15) is granted. This ruling is without prejudice to a motion, filed no later than August 25, 2025, for leave to amend the complaint. Any such motion must include (1) a clean copy of the proposed amended complaint, (2) a redlined version of the proposed amended complaint showing all changes from the complaint, and (3) a memorandum addressing why the amendments would not be futile.

SO ORDERED.

Dated:   August 9, 2025

_____
Lewis A. Kaplan
United States District Judge

---

[67] *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) (citing *Wieder v. City of New York*, 569 Fed. App'x 28, 30 (2d Cir. 2014) (summary order)).

[68] *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014).