UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STEFAN MOZDZIAK,

                      Plaintiff,

              -against-

ARIANNE ROMEO, *et al.*,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                24-cv-8579 (LAK)

**MEMORANDUM OPINION**

                      Appearances:

                              Brett Harris Klein
                              BRETT H. KLEIN, ESQ., PLLC
                              *Attorney for Plaintiff*

                              Mark Robert Ferguson
                              Assistant Attorney General
                              LETITIA JAMES
                              NEW YORK STATE ATTORNEY GENERAL
                              *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Stefan Mozdziak brought claims under Section 1983 arising from his expulsion from State University of New York Maritime College ("SUNY Maritime") and arrest by New York State University Police – Maritime ("UPD") officers. After the Court granted defendants' motion to dismiss the complaint, plaintiff now moves for leave to file an amended complaint.

2

***Background***[1]

*Disciplinary Proceeding and Arrest*

In the proposed amended complaint ("PAC"), Mozdziak alleges that, on September 21, 2021, a SUNY Maritime building official contacted UPD to report that a racial epithet had been etched into the door of a dorm elevator.[2]  The next day, a student "T.N." emailed the UPD stating that he had observed the etching when he moved into the dorm on August 23, 2021.[3]  On October 1, 2021, Assistant Dean Arianne Romeo received a joint statement from two students, D.R. and S.W., alleging they saw Mozdziak, who also was enrolled as a student, carve the epithet into an elevator on August 29, 2021 at 9:30 p.m.,[4] six days after T.N. recalled having seen the etching. Romeo also "was aware of the T.N. email."[5]

Romeo subsequently initiated a disciplinary proceeding against Mozdziak under SUNY Maritime's Code of Conduct.[6]  That proceeding culminated in a hearing before "a judicial

---

[1] At this stage, the Court assumes the truth of the well-pleaded factual allegations of the proposed amended complaint and draws all reasonable inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[2] Dkt 30-2 ("PAC") ¶ 13.

[3] *Id.* ¶ 14.

[4] *Id.* ¶¶ 7, 16.

[5] *Id.* ¶ 17.

[6] *Id.*

3

board, of which defendant Romeo was a member" on November 10, 2021.[7]  Two days later, Mozdziak was expelled from SUNY Maritime.[8]

        The PAC alleges several deficiencies in the disciplinary proceeding.  First, it alleges that Mozdziak's attorneys provided Romeo with exonerating evidence, including statements from eleven students stating that they had been present continuously with Mozdziak watching a pay-per-view boxing match from approximately 8:45 p.m. until 12:00 a.m. on August 29, 2021, the night he allegedly made the etching.[9]  Second, it alleges that Romeo withheld from Mozdziak and the rest of the board the T.N. email, despite a request from Mozdziak's attorney that he be provided with any exculpatory evidence known to Romeo.[10]

        On November 12, 2021, the day of Mozdziak's expulsion, Romeo reported to defendant UPD officer Mark Martinez that Mozdziak had vandalized the elevator.[11]  Martinez subsequently spoke with D.R. and S.W., who gave sworn statements in which they recalled seeing Mozdziak etch the epithet while they were in the elevator with him on August 29.  On November 21, 2021, Martinez and defendants Paulino and Perdoncin (the "Officer Defendants") arrested Mozdziak.[12]  Mozdziak was processed on charges of criminal mischief and making graffiti and

---

[7]      *Id.* ¶ 20.

[8]      *Id.* ¶ 22.

[9]      *Id.* ¶ 18–19.

[10]      *Id.* ¶ 21.

[11]      *Id.* ¶ 23.

[12]      *Id.* ¶ 27.

4

issued a desk appearance ticket.[13]  On December 11, 2021, Mozdziak was arraigned and released on his own recognizance.[14]  The  charges against him were adjourned in contemplation of dismissal on February 3, 2022, and thereafter dismissed and sealed.[15]

While the criminal process was ongoing, Mozdziak filed an Article 78 proceeding in New York state court challenging his expulsion.[16]  The New York State Court Appellate Division, First Department annulled his expulsion based on the exculpatory T.N. email and alibi evidence from other students.[17]

*Procedural Posture*

Mozdziak filed this action on November 12, 2024.[18]  The complaint alleged claims against Romeo, the Officer Defendants, and unnamed "officers and/or under agents of SUNY Maritime and/or UPD"[19] (the "Unnamed Defendants") under 42 U.S.C. § 1983 for false arrest/unlawful imprisonment, malicious prosecution, violation of his right to a fair trial/due process,

---

[13]

    *Id.* ¶¶ 27–28.

[14]

    *Id.* ¶ 31.

[15]

    *Id.* ¶ 32.

[16]

    *Id.* ¶ 34.

[17]

    *Id.* ¶ 35; *see Mozdziak v. State Univ. of New York Mar. Coll.*, 179 N.Y.S.3d 210 (1st Dept. 2022).

[18]

    Dkt 1.

[19]

    *Id.* ¶ 9.

5

failure to intervene, and supervisory liability.[20]

On August 11, 2025, the Court issued a memorandum opinion ("August 11 Opinion") granting defendants' motion to dismiss all claims.[21]  The Court held that the complaint did not allege adequately (1) Romeo's personal involvement in the alleged constitutional deprivation[22] or (2) false arrest, malicious prosecution, fair trial, and failure to intervene and supervisory liability claims against the Officer Defendants.[23]  Those rulings were without prejudice to a motion for leave to amend the complaint.[24]

On September 8, 2025, Mozdziak moved for leave to amend the complaint and attached the PAC.  Defendants oppose the motion on the grounds that amendment would be futile.

## *Discussion*

I.    *Legal Standard*

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires."[25]  "Where a party opposes leave to amend on 'futility' grounds," however, "the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional

---

[20]

    *Id.* ¶¶ 32–50.

[21]

    Dkt 25.

[22]

    *Id.* at 4–5.

[23]

    *Id.* at 10–16.

[24]

    *Id.* at 16.

[25]

    Fed. R. Civ. P. 15(a)(2).

6

Fed. R. Civ. P. 12(b) standard."[26]  To avoid dismissal under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]  In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[29]

## II.    *Claims Against Romeo*

In the August 11 Opinion, the Court ruled that the original complaint did not state a viable claim against Romeo because it failed to allege her personal involvement in any constitutional deprivation.  The PAC remedies this deficiency by including specific allegations about Romeo's involvement in the challenged conduct.  Accordingly, the Court turns to the merits of the claims against Romeo, which fall into two categories: (1) claims related to Mozdziak's arrest and subsequent criminal proceedings ("Arrest-Related Claims"), and (2) claims related to the SUNY Maritime disciplinary proceeding ("Disciplinary Proceeding Claims").

---

[26]

*New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (collecting cases).

[27]

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[28]

*Id.* at 678.

[29]

*See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

7

*A.      Arrest-Related Claims*

*i.      False Arrest and Malicious Prosecution*

The PAC asserts false arrest and malicious prosecution claims under Section 1983 against Romeo arising from Mozdziak's arrest.  "A civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution.  Thus, even if a civilian complainant is ultimately incorrect in his belief as to whether a person is committing a crime, he need only have had a reasonable basis for this belief in order to have the probable cause necessary to defeat a malicious prosecution or false arrest claim.  However, a complainant can be held liable for false arrest if the complainant intentionally provided false information to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report."[30]

The PAC does not allege that Romeo provided any false information to the UPD.  Instead, Mozdziak argues that Romeo had no reasonable basis to make a report to the UPD.  But the PAC plainly shows there was a reasonable basis for Romeo's report — the statement from purported eyewitnesses, D.R. and S.W., identifying Mozdziak as the perpetrator.  The PAC alleges that Romeo

---

[30]     *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) (internal citations and quotation marks omitted).

To state a claim under Section 1983, a plaintiff must allege also that the defendant was acting under the color of state law.  *Bacquie v. City of New York*, No. 99CIV.10951(JSM), 2000 WL 1051904, at *1 (S.D.N.Y. July 31, 2000).  Romeo argues that she was acting in a private capacity in reporting Mozdziak to the UPD, and that her alleged coordination with the UPD does not constitute state action.  *See id.* ("A private individual may be subject to § 1983 liability if that individual willfully collaborated with an official state actor in the deprivation of a federal right.").  The Court need not reach this argument given the disposition of the motion.

8

was aware of other information that undercut the reliability of the purported eyewitness accounts — namely, unsworn statements from eleven students provided by Mozdziak's attorneys stating that they were with Mozdziak on October 29, 2021, continuously from 8:45 p.m. until 12:00 a.m. watching a boxing match. But Romeo reasonably could have concluded that Mozdziak briefly left the room where the match was being viewed, took the elevator with D.R. and S.W., and subsequently returned to watch the match. Indeed, that is exactly what happened according to statements D.R. and S.W. later gave to police.[31]   Even drawing all reasonable inferences in Mozdziak's favor — as the Court must at this stage — the PAC does not allege sufficiently that there was no reasonable basis for Romeo's report. Accordingly, the PAC does not allege adequately Section 1983 false arrest and malicious prosecution claims against Romeo arising from Mozdziak's arrest.

### ii.    Fair Trial

To state a claim for denial of a fair trial in this context, a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."[32]   Here, the PAC does not allege that Romeo was an investigating official. Accordingly, the PAC does not allege adequately a fair trial claim against Romeo arising from the criminal proceedings against Mozdziak.

---

[31]    Dkt 17-1 at 2–5. As set forth in the August 11 Opinion, "the Court takes judicial notice of the UPD police report and the contents of the sworn witness statements contained therein but not for their truth." Dkt 25 at 10.

[32]    *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

    *B.*    *Disciplinary Proceeding Claims*

        The PAC asserts also malicious prosecution and fair trial claims under Section 1983 against Romeo arising from the disciplinary proceeding against Mozdziak.

        *i.*    *Malicious Prosecution*

        Second Circuit "case law does not forbid a [Section] 1983 malicious prosecution claim premised on a civil or administrative proceeding . . . ."[33]  Such claims, however, must "be premised on a violation of Fourth Amendment rights."[34]  "A plaintiff asserting a Fourth Amendment malicious prosecution claim under [Section] 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'"[35]

        Here, Mozdziak argues that the disciplinary proceeding "required plaintiff to make an appearance at a hearing to face charges of an arguably quasi-criminal nature."[36]  But the PAC does not allege that a loss of liberty was a potential consequence of the disciplinary proceeding. Indeed, the Second Circuit has held that an administrative proceeding did not threaten a deprivation of liberty even where the "plaintiffs could have been criminally prosecuted had they been found guilty in the administrative proceeding" and they "were suspended without pay for thirty days

---

[33]    *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004).

[34]    *Id.*

[35]    *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995).

[36]    Dkt 31 at 7.

pending the disposition of the disciplinary charges."[37]   The PAC alleges that the disciplinary proceeding threatened Mozdziak with expulsion.  While that consequence no doubt was serious, it was not a "deprivation of liberty consistent with the concept of 'seizure.'"[38]  Accordingly, the PAC does not allege adequately a malicious prosecution claim against Romeo arising out of the disciplinary proceeding.

### ii.    *Fair Trial*

"[A] denial of the right to a fair trial claim, as it is conceived of in the Second Circuit, is meant to redress unfairness in *criminal proceedings*."[39]  Mozdziak does not cite any authority for the proposition that a fair trial claim may arise out of a civil proceeding.  Even assuming that a fair trial claim could arise in that context, Mozdziak would have to allege that he was deprived of life, liberty, or property as a result of the withheld evidence as an element of that claim.[40]   The PAC does not allege that Mozdziak was deprived of his liberty as a result of the disciplinary proceeding.  Accordingly, the PAC does not allege adequately a claim against Romeo arising out of the disciplinary proceeding for the denial of the right to fair trial.

---

[37]

*Washington*, 373 F.3d at 316.

[38]

*Singer*, 63 F.3d at 116.

[39]

*Zappin v. Cooper*, No. 16 CIV. 5985 (KPF), 2018 WL 2305562, at *3 (S.D.N.Y. May 18, 2018) (emphasis added).

[40]

*See Garnett*, 838 F.3d at 279; Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012).

III.    *Claims Against Officer Defendants*

In the August 11 Opinion, the Court ruled that (1) the false arrest and malicious prosecution claims against the Officer Defendants must be dismissed because there was arguable probable cause to arrest and prosecute, (2) the denial of fair trial claim must be dismissed because Mozdziak did not allege adequately a deprivation of liberty, and (3) the failure to intervene and supervisory liability claims must be dismissed because Mozdziak had not alleged sufficiently any underlying constitutional violation.  Mozdziak argues that the PAC (1) alleges additional facts undermining the arguable probable cause to arrest and prosecute, (2) alleges a post-arraignment deprivation, and (3) alleges adequately failure to intervene and supervisory liability claims arising from the underlying constitutional violations.  The Court addresses each argument in turn.

A.    *False Arrest and Malicious Prosecution*

As set forth in the August 11 Opinion, a police officer is entitled to qualified immunity from liability for his discretionary actions if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[41] "Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest. Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could

---

[41]    *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

disagree on whether the probable cause test was met.'"42

> The August 11 Opinion concluded:

> "Here, two sworn statements from purported eyewitnesses indicated that Mozdziak had committed a crime. Although the [T.N.] email undercut those statements because it indicated that the etching had taken place earlier, it was unsworn and did not reflect an eyewitness account of the incident. Mozdziak does not identify authority clearly establishing with the requisite high degree of specificity that probable cause did not exist in such circumstances. At the very least, arguable probable cause existed because officers of reasonable competence could disagree on whether the probable cause test was met. Mozdziak is entitled to all reasonable inferences from the facts alleged, including those that defeat the immunity defense. But, taking into account the facts alleged and the police report, it is beyond doubt that the plaintiff can prove no set of facts that would prove that there was not arguable probable cause.

> Accordingly, the Officer Defendants are entitled to qualified immunity for the false arrests claims as alleged."43

The Court concluded also that the Officer Defendants were entitled to qualified immunity for the malicious prosecution claims brought against them because the arguable probable cause to arrest continued until the charges against Mozdziak were dropped.

Mozdziak argues that the PAC alleges additional information destroying any arguable probable cause. First, the PAC alleges that Romeo might have informed UPD about the unsworn statements regarding Mozdziak's whereabouts on the evening in question.44 Even assuming UPD did have access to those statements, they would not have destroyed the existence of arguable

---

42

    *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

43

    Dkt 25 at 12–13 (footnotes and internal quotation marks omitted).

44

    Mozdziak alleges that Romeo "either did not inform defendant Martinez of the [purportedly] exculpatory evidence . . . or, if defendant Martinez was so informed, he failed to make any record of this information." PAC ¶ 24.

probable cause because it would have been objectively reasonable to conclude that the students did not notice Mozdziak briefly leave the room.  Furthermore, Mozdziak does not identify any authority clearly establishing that unsworn statements substantiating an alibi destroy the existence of probable cause where two purported eyewitnesses gave sworn statements identifying the arrestee as the perpetrator.

    Second, the PAC alleges that there were inconsistencies between the original joint statement from D.R. and S.W. sent to UPD in October (the "October Statement") and the sworn statements D.R. and S.W. gave to UPD in November.  The PAC alleges that the October Statement said that D.R. and S.W. returned to their rooms after the incident,[45] while the sworn statements said they went to watch the boxing match after the incident.[46]  This inconsistency, to the extent one exists,[47] is minor and collateral to the thrust of the allegations made in all statements — that D.R. and S.W. were in the elevator with Mozdziak where they saw him carve the epithet.

    The PAC alleges also that the sworn statements were inconsistent with each other because one said the elevator was vandalized on the way up while the other allegedly said the vandalism occurred while going down.[48]  But the statements are not materially inconsistent.  S.W.'s

---

[45]

    PAC ¶ 26.

[46]

    Dkt 17-1 at 2.  The Court draws the inference that D.R. and S.W. did not reside in the room where the boxing match was being aired.

[47]

    The October Statement could be understood to mean that D.R. and S.W. later returned to their rooms after going to watch the boxing match.

[48]

    PAC ¶ 26.

statement says that Mozdziak "carved at the door on our way up in the elevator,"[49] while D.R.'s statement says "We were going from the 4th floor to the 2nd floor to watch a boxing fight."[50]  The second statement does not specify when the etching took place.

Mozdziak does not identify any authority clearly establishing that minor inconsistencies between statements from purported eyewitnesses akin to those here destroy the existence of arguable probable cause based on those statements.  The bottom line is that two people gave sworn statements stating they saw Mozdziak etch the epithet.  Those statements are consistent in all material respects.  The Officer Defendants reasonably could have discounted the alleged alibi evidence or viewed it as consistent with the sworn statements.  It therefore was objectively reasonable officers for the Officer Defendants to have believed that probable cause existed. Accordingly, the PAC does not allege adequately claims for false arrest and malicious prosecution against the Officer Defendants.

### B.    Fair Trial

To state a claim for denial of a fair trial in this context, a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."[51]  The August 11 Opinion held that Mozdziak had not alleged adequately a denial of his fair trial rights because he did not allege that he was deprived of life, liberty, or

---

[49]    Dkt 17-1 at 3.

[50]    *Id.* at 5.

[51]    *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

property.

The PAC alleges that Mozdziak was "compelled to return to court until all the charges lodged against him were adjourned in contemplation of dismissal."[52] Mozdziak argues that this restriction satisfies the deprivation of liberty element.

The Second Circuit has held "that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."[53]   In the post-arraignment context, the Second Circuit has held that the deprivation of liberty element is satisfied where the plaintiff was forced to appear in court multiple times and subject to travel limitations.[54]   Based on those precedents, "[c]ourts in this circuit have looked to, for example, 'the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions,' to determine whether a plaintiff suffered a further deprivation of liberty."[55]

Here, the PAC does not allege that Mozdziak made any court appearances post-arraignment or was subject to incarceration or bail restrictions.  The PAC does allege that Mozdziak was released on his own recognizance and thus "compelled to return to court until all the charges

---

[52]     PAC .

[53]     *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir.2010).

[54]     *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215–16 (2d Cir. 2000); *Murphy v. Lynn*, 118 F.3d 938, 945–46 (2d Cir.1997).

[55]     *Smith v. Barr*, No. 21-CV-02280 (HG) (PK), 2024 WL 4957281, at *2 (E.D.N.Y. Nov. 12, 2024) (quoting *Hanson v. New York City*, No. 15-cv-1447, 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018)).

16

lodged against him were adjourned in contemplation of dismissal."[56]  But Mozdziak does not identify any authority for the proposition that this restriction alone may have constituted a deprivation of liberty sufficient to support a a denial of fair trial claim.[57]

Fewer than two months transpired between Mozdziak's arraignment and the adjournment in contemplation of dismissal.  Mozdziak does not allege that he was deprived of his liberty during that time.  Accordingly, the PAC does not allege adequately a denial of fair trial claim.

C.    *Failure to Intervene and Supervisory Liability*

"A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation."[58]  And where "there was no underlying constitutional violation, there is also no supervisory liability."[59]  Here, Mozdziak has not alleged sufficiently that there was an underlying constitution violation for which he is entitled to relief.

Accordingly, the failure to intervene and supervisory liability claims must be dismissed.

---

[56]    PAC ¶ 32.

[57]    *Cf. Evans v. City of New York*, No. 12-CV-5341 MKB, 2015 WL 1345374, at *6 (E.D.N.Y. Mar. 25, 2015) ("Plaintiff's allegation that she was required, as a post-arraignment defendant, to make eighteen court appearances is sufficient to demonstrate a liberty deprivation."); *Fowler-Washington v. City of New York*, No. 19-CV-6590(KAM)(RER), 2023 WL 2390538, at *10 (E.D.N.Y. Mar. 7, 2023) (plaintiff made four post-arraignment court appearances);

[58]    *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) (citing *Wieder v. City of New York*, 569 Fed. App'x 28, 30 (2d Cir. 2014) (summary order)).

[59]    *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014).

*Conclusion*

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint

(Dkt 29) is denied.  The clerk shall close the case.

SO ORDERED.

Dated:        December 4, 2025

_____

Lewis A. Kaplan
United States District Judge